IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | |
| ) | Criminal Case No. 21-cr-00360-LKG |
| JAMES WILLIAM WILSON, JR. and ) | |
| MAUREEN ANN WILSON, ) | Dated: April 13, 2023 |
| ) | |
| Defendants. ) | |
| ) | |

**MEMORANDUM OPINION AND ORDER**

**I.    INTRODUCTION**

Defendants James and Maureen Wilson have filed the following 10 pre-trial motions in this criminal matter: (1) Defendant James Wilson's motion for attorney-conducted *voir dire* (ECF No. 56); (2) Defendant James Wilson's motion for a bill of particulars (ECF No. 57); (3) Defendant James Wilson's motion to suppress statements (ECF No. 58); (4) Defendant James Wilson's motion to dismiss Counts 15 and 16 of the Indictment (ECF No. 59); (5) Defendant James Wilson's motion to sever co-Defendant Maureen Wilson (ECF No. 60); (6) Defendant James Wilson's motion to suppress email evidence (ECF No. 65); (7) Defendant James Wilson's motion to suppress cell phone evidence (ECF No. 68); (8) Defendant James Wilson's motion to dismiss Counts 18 and 19 of the Indictment (ECF No. 71); (9) Defendant Maureen Wilson's motion to dismiss Count 17 of the Indictment (ECF No. 62); and (10) Defendant Maureen Wilson's motion for severance from co-Defendant James Wilson (ECF No. 63).[1]

The Government has filed an omnibus response in opposition to Defendants' pre-trial motions. ECF No. 73. Defendants have also filed reply briefs in support of their motions. ECF Nos. 76, 77.

---

[1] Defendant Maureen Wilson has also moved to adopt the arguments advanced by James Wilson in ECF Nos. 56 and 57. ECF No. 64. The Court granted that motion on March 7, 2023. ECF No. 78.

On March 15, 2023, the Court held a hearing on Defendants' pre-trial motions, during which, the Court heard oral arguments from counsel and the testimony of Federal Bureau of Investigation Special Agent Justin Williams. ECF No. 80; ECF No. 84 at 87. For the reasons that follow, and stated during the hearing, the Court:

(1) **DENIES** Defendant James Wilson's motion for attorney-conducted *voir dire* (ECF No. 56);

(2) **GRANTS-in-PART** Defendant James Wilson's motion for a bill of particulars (ECF No. 57);

(3) **HOLDS-in-ABEYENCE** Defendant James Wilson's motion to suppress statements (ECF No. 58);

(4) **DENIES** Defendant James Wilson's motion to dismiss Counts 15 and 16 of the Indictment (ECF No. 59);

(5) **DENIES WITHOUT PREJUDICE** Defendant James Wilson's motion to sever co-Defendant Maureen Wilson (ECF No. 60);

(6) **DENIES** Defendant James Wilson's motion to suppress email evidence (ECF No. 65);

(7) **DENIES** Defendant James Wilson's motion to suppress cell phone evidence (ECF No. 68);

(8) **DENIES** Defendant James Wilson's motion to dismiss Counts 18 and 19 of the Indictment (ECF No. 71);

(9) **DENIES** Defendant Maureen Wilson's motion to dismiss Count 17 of the Indictment (ECF No. 62); and

(10) **DENIES WITHOUT PREJUDICE** Defendant Maureen Wilson's motion for severance from co-Defendant James Wilson (ECF No. 63).

II.   **FACTUAL BACKGROUND**

Defendants James and Maureen Wilson are a married couple. ECF No. 60 at 1. On September 15, 2021, a Grand Jury sitting in Baltimore, Maryland returned a 21-Count Indictment against Defendants, charging the following offenses: (1) Count 1 – Conspiracy to Commit Mail

and Wire Fraud (James and Maureen Wilson); (2) Count 2 – Mail Fraud (James Wilson): (3) Count 3 – Mail Fraud (James Wilson); (4) Count 4 – Mail Fraud (James Wilson); (5) Count 5 – Mail Fraud (James and Maureen Wilson); (6) Count 6 – Mail Fraud (James and Maureen Wilson); (7) Count 7 – Mail Fraud (James and Maureen Wilson); (8) Count 8 – Mail Fraud (James and Maureen Wilson); (9) Count 9 – Mail Fraud (James and Maureen Wilson); (10) Count 10 – Wire Fraud (James Wilson); (11) Count 11 – Wire Fraud (James Wilson); (12) Count 12 – Wire Fraud (James and Maureen Wilson); (13) Count 13 – Wire Fraud (James and Maureen Wilson); (14) Count 14 – Conspiracy to Violate Money Laundering Statutes (James and Maureen Wilson); (15) Count 15 – Concealment Money Laundering (James Wilson); (16) Count 16 – Concealment Money Laundering (James Wilson); (17) Count 17 – Conducting Transaction in Criminally Derived Proceeds (Maureen Wilson); (18) Count 18 – Filing a False Tax Return – Calendar Year 2018 (James and Maureen Wilson); (19) Count 19 – Filing a False Tax Return – Calendar Year 2019 (James and Maureen Wilson; (20) Count 20 – Aggravated Identity Theft (James Wilson); and (21) Count 21 – Aggravated Identity Theft (James Wilson). ECF No. 1.

James Wilson is a former insurance broker in Maryland and his wife, Maureen Wilson, was a registered stockbroker. *Id.* at 1. The Indictment alleges that, from at least in or about 1996, and continuing thereafter until the present, Defendants devised and conspired to execute a scheme and artifice to defraud:

> (1) insurance companies as to material matters, and to obtain or attempt to obtain by materially false and fraudulent pretenses and representations, money and property of those insurance companies, on excess of $20 million; and
>
> (2) individual investors as to material matters, and to obtain and attempt to obtain by means of materially false and fraudulent pretenses and representations, money and property of those individuals investors to pay insurance premiums.

*Id.* at 3.

The Indictment also alleges that Defendants knowingly caused certain death benefit claims and change of beneficiary forms to be delivered by mail, or transmitted by wire communication, for the purpose of executing the alleged scheme. *Id.* at 3-4. In addition, the Indictment alleges that, from March 2, 2018 through December 3, 2020, Defendants conspired with each other to commit money-laundering, in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i) and

1957(a), by, among other things: "controlling multiple bank accounts in their own names, both singularly and jointly, through which they moved proceeds of their mail and wire fraud scheme;" "conducting financial transactions with no legitimate business purpose;" "causing fraud proceeds to move through bank accounts owned by others;" "transferring and causing to be transferred their fraud proceeds between various bank accounts in amounts of over $10,000 using personal checks, bank checks, wire transfers, and other means;" and "using their fraud proceeds to purchase assets and benefit themselves by writing checks and making online transfers." *Id.* at 13-14.

In this regard, the Indictment further alleges that James Wilson knowingly conducted financial transactions on March 18, 2020, in an attempt to "conceal and disguise the nature, location, source, ownership, and control" of certain proceeds of specified unlawful activity and that, on or about November 7, 2019, Maureen Wilson conducted a transaction in criminally derived proceeds, by issuing a personal check drawn on the Wilson's BB&T bank account in the amount of $500,000, which she deposited into a Charles Schwab account held in her name. *Id.* at 15-16.

Lastly, the Indictment alleges that Defendants filed false tax returns for tax years 2018 and 2019. *Id.* at 17-18.

On March 4, 2022, Mr. Wilson was arraigned, and he pleaded not guilty as to Counts 1, 2-13, 14-16, and 18-21 of the Indictment. ECF No. 34. On March 4, 2022, Ms. Wilson was also arraigned, and she pleaded not guilty as to Counts 1, 5-9, 12-14, and 17-19 of the Indictment. ECF No. 35.

Trial is currently scheduled to begin in this matter on September 18, 2023. ECF No. 72.

### III.   STANDARDS OF DECISION

#### A.  Fed. R. Crim. P. 14

Federal Rule of Criminal Procedure 14 addresses relief from prejudicial joinder for criminal co-defendants. Fed. R. Crim. P. 14. Under this Rule, the Defendants bear the burden of demonstrating that joinder of their offenses together into one trial is so "manifestly prejudicial that it outweighed the dominat[ing[ concern with judicial economy." *United States v. Brock*, 190

F. App'x 279, 281 (4th Cir. 2006) (quoting *United States v. Acker*, 52 F.3d 509, 514 (4th Cir. 1995)).

The Supreme Court has held that a court should grant severance under Rule 14 only if there exists some serious risk that a joint trial would prevent the jury from making a reasonable judgment regarding each defendant's guilt or innocence. *Zafiro v. United States*, 506 U.S. 534, 539 (1993). The United States Court of Appeals for the Fourth Circuit has also characterized those situations in which a discretionary severance is appropriate under Rule 14 as "rare." *United States v. Hornsby*, 666 F.3d 296, 308-09 (4th Cir. 2012). And so, the party requesting severance under Rule 14 "bears the burden of demonstrating 'a *strong* showing of prejudice[.]'" *United States v. Branch*, 537 F.3d 328, 341 (4th Cir. 2008) (quoting *United States v. Goldman*, 750 F.2d 1221, 1225 (4th Cir. 1984)) (emphasis added).

### B. Fed. R. Crim. P. 12(b)(3)

Federal Rule of Criminal Procedure 12(b)(3) governs motions that must be made before trial. Fed. R. Crim. P. 12(b)(3). This Rule provides, in relevant part, that:

> The following defenses, objections, and requests must be raised by pretrial motion if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits:
>
> (B) a defect in the indictment or information, . . .
>
> (C) suppression of evidence;
>
> (D) severance of charges or defendants under Rule 14. . . .

*Id.* In this regard, the Fourth Circuit has held that, to be legally sufficient, an indictment "must contain the elements of the offense charged." *United States v. Kingrea*, 573 F.3d 186, 191 (4th Cir. 2009) (citations omitted); *see also United States v. Loayza*, 107 F.3d 257, 260 (4th Cir. 1997) ("If the indictment does not contain every essential element of the offense, it is invalid."); *United States v. Brandon*, 298 F.3d 307, 310 (4th Cir. 2002) ("When the words of a statute are used to describe the offense generally, they 'must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged.'").

### C. Bill Of Particulars

A defendant is entitled to a bill of particulars when an indictment fails to adequately inform the defendant of the charges against him or her. Fed. R. Crim. P. 7(f) ("The defendant may move for a bill of particulars before or within 14 days after arraignment or at a later time if the court permits."). In this regard, Fed. R. Crim. P. 7(c)(1) requires that an indictment "be a plain, concise, and definite written statement of the essential facts constituting the offense charged[.]" Fed. R. Crim. P. 7(c)(1). And so, the Fourth Circuit has held that:

> An indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which [s]he must defend, and, second, enables [her] to plead an acquittal or conviction in bar of future prosecutions for the same offense. . . . However, simply parroting the language of the statute in the indictment is insufficient. When the words of a statute are used to describe the offense generally, they must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offence, coming under the general description, with which [s]he is charged. Thus, the indictment must also contain a statement of the essential facts constituting the offense charged.

*Brandon*, 298 F.3d at 310 (internal quotations omitted) (emphasis removed); *see also Hamling v. United States*, 418 U.S. 87, 117 (1974) (stating that an indictment is sufficient, if it "first, contains the elements of the offense charged and fairly informs a defendant of the charges against which [s]he must defend, and, second, enables [her] to plead an acquittal or conviction in a bar of future prosecutions for the same offense").

The Fourth Circuit has also held that a motion for a bill of particulars should be granted if certain portions of the indictment are so general that they do not advise a defendant of the specific acts that she must defend against. *See United States v. Fletcher*, 74 F.3d 49, 53 (4th Cir. 1996) (noting that a bill of particulars is appropriate for the purpose of providing missing or additional information so that a defendant can effectively prepare for trial); *see also United States v. Schembari*, 484 F.2d 931, 934-35 (4th Cir. 1973) ("[T]he purpose of a bill of particulars is to enable a defendant to obtain sufficient information on the nature of the charge against him so that he may prepare for trial, minimize the danger of surprise at trial, and enable him to plead his acquittal or conviction in bar of another prosecution for the same offense."); *United States v. Cuong Gia Le*, 310 F. Supp. 2d 763, 773-74 (E.D. Va. 2004) (stating that the Court may order a

bill of particulars when an indictment "sets forth the offense elements and includes a brief statement of the facts and circumstances of the offense, but omits certain essential specifics of the offense"). As long as the indictment—and information provided by the Government through full discovery—is sufficient to fulfill these purposes, a bill of particulars is unnecessary. *United States v. Butler*, 885 F.2d 195, 199 (4th Cir. 1989); *United States v. Jackson*, 757 F.2d 1486, 1491 (4th Cir. 1985).

### D. Fed. R. Crim. P. 24(a)

Lastly, Federal Rule of Criminal Procedure 24 provides that "the court may examine prospective jurors or may permit the attorneys for the parties to do so." Fed. R. Crim. P. 24. The Fourth Circuit has held that this rule grants the Court wide discretion in determining how to examine prospective jurors in conducting *voir dire*. *United States v. ReBrook*, 58 F.3d 961, 969 (4th Cir. 1995).

## IV. ANALYSIS

Defendants have filed the following 10 pre-trial motions in this criminal matter: (1) Defendant James Wilson's motion for attorney-conducted *voir dire* (ECF No. 56); (2) Defendant James Wilson's motion for a bill of particulars (ECF No. 57); (3) Defendant James Wilson's motion to suppress statements (ECF No. 58); (4) Defendant James Wilson's motion to dismiss Counts 15 and 16 of the Indictment (ECF No. 59); (5) Defendant James Wilson's motion to sever co-Defendant Maureen Wilson (ECF No. 60); (6) Defendant James Wilson's motion to suppress email evidence (ECF No. 65); (7) Defendant James Wilson's motion to suppress cell phone evidence (ECF No. 68); (8) Defendant James Wilson's motion to dismiss Counts 18 and 19 of the Indictment (ECF No. 71); (9) Defendant Maureen Wilson's motion to dismiss Count 17 of the Indictment (ECF No. 62); and (10) Defendant Maureen Wilson's motion for severance from co-Defendant James Wilson (ECF No. 63). The Court addresses each of these motions below.

### A. Attorney-Conducted *Voir Dire* Is Unwarranted

As an initial matter, the Court declines Mr. Wilson's request that counsel be permitted to conduct the *voir dire* for this case. "The conduct of voir dire necessarily is committed to the sound discretion of the trial court[.]" *United States v. Lancaster*, 96 F.3d 734, 738 (4th Cir.

7

1996).  In this regard, Federal Rule of Criminal Procedure 24(a) authorizes the Court to permit the participation of counsel in *voir dire* examination of prospective jurors and the Rule provides, in relevant part, that:

> The court may examine prospective jurors or may permit the attorneys for the parties to do so. . . . If the court examines the jurors, it must permit the attorneys for the parties to: ask further questions that the court considers proper; or submit further questions that the court may ask if it considers them proper.

Fed. R. Crim. P. 24(a).  And so, consistent with this Rule, this Court's practice has been to first examine prospective jurors and to permit the attorneys for the parties to either ask any additional questions that the Court considers proper, or to submit additional questions that the Court may ask if it considers them to be proper during the *voir dire*.

In this case, the *voir dire* questions for prospective jurors will be developed by the Court in close consultation with counsel for the parties and counsel will be present during the examination of prospective jurors.  The Court is mindful that the Defense has identified data showing that prospective jurors will be more candid in their responses to questions if posed by counsel, rather than by the Court.  ECF No. 56 at 6-8.  But the Defense does not put forward any data or evidence to show that the Court's current practice of examining prospective jurors in the presence of counsel would discourage truthful responses to the Court's questions, or otherwise impede the selection of an impartial jury.  *See id.*

Given this, the Defense has not shown that an attorney-conducted *voir dire* is warranted in this case.  And so, the Court DENIES the Defense's motion for an attorney-conducted *voir dire*.

### B.  A Bill Of Particulars Is Warranted For Count 1 Of The Indictment

The Defense is on firmer ground in seeking a bill of particulars regarding the specific life insurance policies and list of investors at issue in Count 1 of the Indictment.  "The purpose of a bill of particulars is to enable a defendant to obtain sufficient information on the nature of the charges against him so that he may prepare for trial, minimize the danger of surprise at trial, and enable him to plead his acquittal or conviction in bar of another prosecution for the same offense."  *Schembari*, 484 F.2d at 934-35.  And so, a bill of particulars should be required by the Court only where the charges of the indictment are so general that they do not advise the

defendant of the specific acts of which he or she is accused. *United States v. Walsh*, 194 F.3d 37, 47 (2d Cir. 1999).

In this case, Count 1 of the Indictment alleges that, from at least in or about 1996, and continuing thereafter until the present, Defendants devised and conspired to execute a scheme and artifice to defraud:

> (1) insurance companies as to material matters, and to obtain or attempt to obtain by materially false and fraudulent pretenses and representations, money and property of those insurance companies, on excess of $20 million; and
>
> (2) individual investors as to material matters, and to obtain and attempt to obtain by means of materially false and fraudulent pretenses and representations, money and property of those individuals investors to pay insurance premiums.

ECF No. 1 at 3. Count 1 of the Indictment further alleges that the manner and means of this conspiracy and the scheme and artifice to defraud include, among other things, "fraudulently procuring more than 30 life insurance policies;" "making material misrepresentations on life insurance applications;" and "fraudulently obtaining money from victim-investors." *Id.* at 4.

In addition, Count 14 of the Indictment alleges that, from March 2, 2018 through December 3, 2020, Defendants conspired with each other to commit money-laundering, in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i) and 1957(a), by, among other things: "controlling multiple bank accounts in their own names, both singularly and jointly, through which they moved proceeds of their mail and wire fraud scheme;" "conducting financial transactions with no legitimate business purpose;" "causing fraud proceeds to move through bank accounts owned by others;" " transferring and causing to be transferred their fraud proceeds between various bank accounts in amounts of over $10,000 using personal checks, bank checks, wire transfers, and other means;" and "using their fraud proceeds to purchase assets and benefit themselves by writing checks and making online transfers." *See id.* at 13-14.

Mr. Wilson requests a bill of particulars for Counts 1 and 14 of the Indictment as follows:
- The specific life insurance policies at issue in Count 1.
- The number of and identities of investors who were allegedly defrauded by the Wilsons and the specific ways in which they were allegedly defrauded.

- The dates, times, and financial transactions alleged to have been done "with no legitimate purpose" in Count 14.

- The specific transactions that are alleged to have involved fraud proceeds that were "move[d] through bank accounts owned by others" in Count 14.

- The specific transactions thar are alleged to have involved fraud proceeds that were "transferr[ed] and caus[ed] to be transferred . . . between various bank accounts in amounts over $10,000 using personal checks, bank checks, wire transfers, and other means" in Count 14.

- The specific transactions in which the Wilsons "us[ed] . . . fraud proceeds to purchase assets and benefit themselves by writing checks and making online transfers" in Count 14.

ECF No. 57 at 2. The Court agrees with the Defense that a bill of particulars regarding the insurance policies and victim-investors at issue in Count 1 of the Indictment is appropriate, so that Defendants can adequately prepare for trial. *See, e.g.*, ECF No. 73 at 8 (citing *Schembari*, 484 F.2d at 934-35; *Butler*, 885 F.2d at 199.

The Court reads Counts 1 and 14 of the Indictment to satisfy the requirements of Federal Rule of Criminal Procedure 7. Fed. R. Crim. P. 7(c)(1) (an indictment is required to "be a plain, concise, and definite written statement of the essential facts constituting the offense charged."). But the Court is concerned that, given the significant volume of evidence related to the offense charged in Count I of the Indictment, particularly with regards to the alleged manner and means for committing this offense, the Indictment fails to give the Defense sufficient notice of the nature and the contours of the alleged scheme and conspiracy. Notably, the scheme and conspiracy alleged in Count 1 of the Indictment spans 25 years and relates to more than 30 life insurance policies. ECF No. 1 at 4. Given this, the Defense is entitled to more information from the Government to explain the nature and contours of this offense. And so, for this reason, the Court GRANTS the Defense's motion for a bill of particulars as to Count 1 regarding:

(1) The specific life insurance policies at issue in Count 1; and

(2) The number of, and identities of, investors who were allegedly defrauded by the Wilsons and the specific ways in which they were allegedly defrauded.[2]

### C. Dismissal Of Counts 15-19 Is Unwarranted

The Court next considers the Defense's motions to dismiss Counts 15, 16, 17, 18 and 19 of the Indictment. For the reasons that follow, the Court DENIES these motions.

First, as to the offenses alleged in Counts 15, 16, and 17 of the Indictment, the Defense argues without persuasion that the Court should dismiss these Counts, because they are unconstitutionally vague and/or duplicitous. Counts 15, 16 and 17 of the Indictment allege concealment of money-laundering charges against James Wilson and a conducting transaction in criminally derived proceeds charge against Maureen Wilson. ECF No. 1 at 15, 16.

Specifically, Counts 15 and 16 of the Indictment allege that, on March 18, 2020, James Wilson deposited cashier's checks into PNC Account x0609 each of which involved the proceeds of mail and wire fraud, while knowing that each transaction was designed to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said mail and wire fraud, and that while conducting and attempting to conduct such financial transactions, knowing that the property involved represented proceeds of some form of unlawful activity. *See id.* at 15. Count 17 of the Indictment further alleges that, on or about November 7, 2019, Maureen Wilson issued personal check number 900 drawn on BB&T Account x4158 for $500,000 made payable to "Schwab," which was deposited into a Charles Schwab account ending in x0385, such property having been derived from mail and wire fraud. *See id.* at 16.

The Defense argues that these Counts should be dismissed as unconstitutionally vague, because the Indictment does not allege facts to show how the funds that the Defendants allegedly laundered were derived from mail and wire fraud. ECF No. 59 at 2-3; ECF No. 62 at 2-3. The Fourth Circuit has previously rejected this precise argument in *United States v. Smith*, 44 F.3d 1259 (4th Cir. 1995).

In that case, the Fourth Circuit found held that:

"[t]he money laundering statute requires . . . that the [property at issue] be derived from 'specified unlawful activity.' While it is necessary in order to

---

[2] Pursuant to the Court's Order dated March 17, 2023, the Government was directed to provide this information to the Defense on or before March 31, 2023. ECF No. 83.

11

> state a money laundering offense to include such an allegation, the requirement is merely a categorical delineation of the type of funds that are subject to a money laundering charge. The core of money laundering, which distinguishes one offense from another, is the laundering transaction itself. Because the requirement that the funds be illegally derived is not the distinguishing aspect and therefore does not lie at the core of the offense, details about the nature of the unlawful activity underlying the character of the proceeds need not be alleged."

*Id.* at 1264-65. Given this, the Government is not required to provide more detail about the nature of the unlawful activity underlying the character of the proceeds at issue in this case. And so, the Court reads *Smith* to close the door on the Defense's efforts to dismiss these Counts as unconstitutionally vague.[3] *See id.* at 1265-66; *see also* 18 U.S.C. § 1957.

The Defense also argues without persuasion that Counts 15, 16, and 17 of the Indictment are duplicitous, because these Counts join two distinct and separate offenses—*i.e.*, mail and wire fraud. ECF No. 59 at 5; ECF No. 62 at 5. As the Defense correctly observes, these Counts identify both mail fraud and wire fraud as the specified unlawful activity from which the proceeds at issue have been derived. But courts have recognized that a single money-laundering count may allege alternative specified unlawful activities. *See, e.g.*, *United States v. Edwards*, 303 F.3d 606, 641-42 (5th Cir. 2002) (allowing jury to base money-laundering conviction on alternative specified unlawful activities does not require reversal even if evidence supporting one of them was factually insufficient); *United States v. Loe*, 248 F.3d 449, 468 (5th Cir. 2001) (stating that the money-laundering statutes do "not require the indictment to specify which unlawful activity generated the funds in question" and upholding convictions where indictment alleged property involved in money laundering was derived from a specified unlawful activity, that is mail and wire fraud under 18 U.S.C. §§ 1341 and 1343); *United States v. Liersch*, No. 04CR02521, 2005 WL 6414047, at *9 (S.D. Cal. May 2, 2005) (money-laundering count is not duplicitous where it alleges one financial transaction involving the laundering of proceeds from two different specified unlawful activities alleged in the conjunctive).

---

[3] The Defense argues that *Smith* is not controlling as to Counts 15 and 16 of the Indictment, because those counts are based upon 18 USC § 1956, rather than 18 USC § 1957. ECF No. 76 at 4. But the Court does not read the rational set forth in *Smith* to be limited to money-laundering charges brought under Section 1957.

Given this, the Court finds no duplicity concern with regards to the charged offenses here, because each money-laundering Count in the Indictment alleges one financial transaction involving the laundering of proceeds from two alternative specified unlawful activities, *i.e.*, mail fraud and wire fraud.  ECF No. 73 at 15.

The argument advanced by the Defense to dismiss the filing of a false tax return charges set forth in Counts 18 and 19 of the Indictment is also unconvincing.  Counts 18 and 19 of the Indictment allege that, in 2018 and 2019, respectively, Defendants received "life insurance proceeds from various life insurance policies insuring the life of" a third party, which they then failed to include as taxable income in their federal joint income tax returns.[4]  ECF No. 1 at 17-18.  The Defense argues that dismissal of these two Counts is warranted, because life insurance proceeds payable by reason of death are excluded from gross income and, therefore, these proceeds would not have been reportable income on their tax returns.  ECF No. 71 at 3.  Given this, the Defense contends that the Government cannot show that Defendants did not believe the tax returns to be true and correct as to every material matter, to prove the filing of false tax return charges.  *Id.*

While the Defense may ultimately prevail in showing that they had no obligation to report the subject life insurance proceeds on their 2018 and 2019 tax returns, the Government correctly observes that, whether the subject insurance proceeds are taxable income, and specifically whether the proceeds were derived from unlawful activity, is a question of fact that must be resolved by the jury.  *See Rutkin v. United States*, 343 U.S. 134, 138 (1952) ("where unlawful gains are secured by fraud of the taxpayer they are taxable").  And so, dismissal of the Indictment's filing of a false tax return Counts is also not warranted.

For these reasons, the Court DENIES the Defense's motions to dismiss Counts 15, 16, 17, 18 and 19 of the Indictment.

---

[4] The elements of subscribing to a false tax return are: (1) the defendant made and subscribed to a tax return containing a written declaration; (2) the tax return was made under penalties of perjury; (3) the defendant did not believe the return to be true and correct as to every material matter; and (4) the defendant acted willfully.  *United States v. Aramony*, 88 F.3d 1369, 1382 (4th Cir. 1996).

### D. The Defense Has Not Shown That Separate Trials Are Warranted

While a closer question, the Defense has also not met its burden to show that separate trials for the two Defendants in this matter is warranted to ensure a fair trial. Rule 14(a) provides that the district court "may order separate trials of counts" "[i]f the joinder of offenses . . . in an indictment . . . or a consolidation for trial appears to prejudice a defendant or the government[.]" Fed. R. Crim. P. 14(a). The Supreme Court has made clear that severance should be ordered when "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539. The Fourth Circuit has also characterized those situations in which a discretionary severance is appropriate under Rule 14 as "rare." *Hornsby*, 666 F.3d at 308-09. And so, this Court "should grant a severance under Rule 14 *only* if there is a serious risk that a joint trial would . . . prevent the jury from making a reliable judgment about guilt or innocence." *Hornsby*, 666 F.3d at 309 (quoting *Zafiro*, 506 U.S. at 539).

The Defense requests that the Court conduct separate trials for the two Defendants in this case, because: (1) the marital communications and testimonial privileges mandate severance of the Defendants; (2) severance is required under *Bruton v. United States*; and (3) Defendants will be prejudiced unless severed, as they will present antagonistic defenses at trial. *See generally* ECF Nos. 60, 63.

As stated during the pre-trial hearing held in this matter on March 15, 2023, the Defense has not shown that either the privilege against adverse spousal testimony, or the privilege of protecting confidential marital communications apply to this case, or warrant separate trials. Notably, the Fourth Circuit has held that "where marital communications have to do with the commission of a crime in which both spouses are participants, the conversation does not fall within the marital privilege." *United States v. Broome*, 732 F.2d 363, 365 (4th Cir. 1984). In addition, to the extent that the testimonial privilege applies to this case, the Government persuasively argues that the Defendants' choice regarding whether to invoke or waive this privilege is not of constitutional import such that a severance is required. ECF No. 73 at 21; *see also United States v. Freeman*, 694 F. Supp. 190, 191-92 (E.D. Va. 1988) ("[T]he privilege not to testify against one's spouse is just that—a privilege. If a criminal defendant may be required to choose his right to testify over his fifth amendment right to avoid self-incrimination, *e.g., Raffel v. United States,* 271 U.S. 494, 499, (1926), surely a defendant may be required to make a

14

choice between her right to testify and her option to assert a privilege that implicates no constitutional right.").

Perhaps more significantly, to date, the Defense has not indicated whether either Defendant will testify at trial or disclosed the nature of their respective defenses. *See United States v. Nida*, No. 2:18-cr-00285, 2019 WL 384954, at *2 (S.D. W. Va. Jan. 30, 2019). Given this, there is not sufficient information before the Court at this time to determine whether the Defendants' defenses will be antagonistic to the degree that would warrant severance. *Zafiro*, 506 U.S. at 538-39 ("Mutually antagonistic defenses are not prejudicial *per se*."). And so, the Court DENIES the Defense's motion to sever WITHOUT PREJUDICE, to permit the Defense to addresses these concerns.

### E. The Defense's Motions To Suppress

As a final matter, the Court addresses the Defense's three motions to suppress. First, Mr. Wilson seeks to suppress certain email evidence in this case upon the ground that the Government has not provided information regarding the methods and procedures that it used to ensure that it searched for and seized information falling within the scope of the relevant search warrants. ECF No. 65 at 1. But, there is no dispute among the parties that the search warrants at issue are valid. *See* ECF No. 76 at 10. A review of these search warrants also shows that the warrants describe in detail the procedure to be used in searching for relevant evidence. *See* ECF No. 67. Given this, the Court agrees with the Government that the Defense identifies no basis to suppress the email evidence seized pursuant to these warrants. And so, the Court DENIES the Defense's motion to suppress email evidence.

The Court must also deny Mr. Wilson's motion to suppress evidence obtained from his cell phone. The Defense argues that this evidence should be suppressed, because the affidavit for the relevant search warrant fails to provide probable cause to search the entirety of Mr. Wilson's cell phone, such as location information, photos and videos. *See generally* ECF No. 68; *see also* ECF No. 76 at 11. But, again, the Defense does not challenge the validity of the search warrant at issue, or provide a legal basis for the Court to suppress this evidence for this reason. And so, the Court also DENIES the Defense's motion to suppress cell phone evidence.

Lastly, Mr. Wilson also seeks to suppress certain statements that he made to law enforcement during a search of his home on November 19, 2020, upon the grounds that he was in custody at the time and was not provided *Miranda* warnings. *See generally* ECF No. 58.

During the pre-trial hearing, the parties presented additional testimony and evidence regarding the circumstances surrounding Mr. Wilson's statements to law enforcement. ECF No. 84 at 87-129. The parties are currently providing supplemental briefing to address this additional evidence. And so, the Court HOLDS-IN-ABEYANCE the Defense's motion to suppress Mr. Wilson's statements pending the completion of the parties' supplemental briefing.

## V.    CONCLUSION

For the reasons discussed above, and stated during the March 15, 2023, pre-trial hearing, the Court:

(1) **DENIES** Defendant James Wilson's motion for attorney-conducted *voir dire* (ECF No. 56);

(2) **GRANTS-in-PART** Defendant James Wilson's motion for a bill of particulars (ECF No. 57);

(3) **HOLDS-in-ABEYENCE** Defendant James Wilson's motion to suppress statements (ECF No. 58);

(4) **DENIES** Defendant James Wilson's motion to dismiss Counts 15 and 16 of the Indictment (ECF No. 59);

(5) **DENIES WITHOUT PREJUDICE** Defendant James Wilson's motion to sever co-Defendant Maureen Wilson (ECF No. 60);

(6) **DENIES** Defendant James Wilson's motion to suppress email evidence (ECF No. 65);

(7) **DENIES** Defendant James Wilson's motion to suppress cell phone evidence (ECF No. 68);

(8) **DENIES** Defendant James Wilson's motion to dismiss Counts 18 and 19 of the Indictment (ECF No. 71);

(9) **DENIES** Defendant Maureen Wilson's motion to dismiss Count 17 of the Indictment (ECF No. 62); and

(10)    **DENIES WITHOUT PREJUDICE** Defendant Maureen Wilson's motion for severance from co-Defendant James Wilson (ECF No. 63).

**IT IS SO ORDERED.**

                                                    s/Lydia Kay Griggsby
                                                    LYDIA KAY GRIGGSBY
                                                    United States District Judge