IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | |
| | ) | Criminal Case No. 21-cr-00360-LKG |
| JAMES WILLIAM WILSON, JR. and | ) | |
| MAUREEN ANN WILSON, | ) | Dated:  July 7, 2023 |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

**I.     INTRODUCTION**

Pending before the Court are two pre-trial motions filed by the Defendants.  First, Defendants James and Maureen Wilson have moved to sever the trial in this criminal matter. ECF Nos. 89, 90, 92, 121.  Second, Defendant James Wilson has moved to suppress certain statements that he made to law enforcement on November 19, 2020.  ECF No. 58, 86.  The Government opposes both motions.  These motions have been fully briefed.  ECF Nos. 58, 86, 89, 90, 92, 93, 95, 97, 101, 121.  The Court held hearings on the motions on March 15, 2023, and July 6, 2023.  For the reasons that follow, the Court: (1) **GRANTS** James Wilson's motion to suppress and (2) **GRANTS** Defendants' motions for severance.

**II.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

**A.     Factual Background**

A detailed factual background of this case is set forth in the Court's April 13, 2023, memorandum opinion and order.  ECF No. 94.  Relevant to the pending pre-trial motions, Defendants James and Maureen Wilson are a married couple and they are co-defendants in this criminal matter.  ECF No. 60 at 1.

On September 15, 2021, a Grand Jury sitting in Baltimore, Maryland returned a 21-Count Indictment against Defendants, charging the following offenses:  (1) Count 1 – Conspiracy to Commit Mail and Wire Fraud  (James and Maureen Wilson); (2) Count 2 – Mail Fraud (James

Wilson): (3) Count 3 – Mail Fraud (James Wilson); (4) Count 4 – Mail Fraud (James Wilson); (5) Count 5 – Mail Fraud (James and Maureen Wilson); (6) Count 6 – Mail Fraud (James and Maureen Wilson); (7) Count 7 – Mail Fraud (James and Maureen Wilson); (8) Count 8 – Mail Fraud (James and Maureen Wilson); (9) Count 9 – Mail Fraud (James and Maureen Wilson); (10) Count 10 – Wire Fraud (James Wilson); (11) Count 11 – Wire Fraud (James Wilson); (12) Count 12 – Wire Fraud (James and Maureen Wilson); (13) Count 13 – Wire Fraud (James and Maureen Wilson); (14) Count 14 – Conspiracy to Violate Money Laundering Statutes (James and Maureen Wilson); (15) Count 15 – Concealment Money Laundering (James Wilson); (16) Count 16 – Concealment Money Laundering (James Wilson); (17) Count 17 – Conducting Transaction in Criminally Derived Proceeds (Maureen Wilson); (18) Count 18 – Filing a False Tax Return – Calendar Year 2018 (James and Maureen Wilson); (19) Count 19 – Filing a False Tax Return – Calendar Year 2019 (James and Maureen Wilson; (20) Count 20 – Aggravated Identity Theft (James Wilson); and (21) Count 21 – Aggravated Identity Theft (James Wilson). ECF No. 1.

The Indictment alleges that, from at least in or about 1996, and continuing thereafter until the present, Defendants devised and conspired to execute a scheme and artifice to defraud:

> (1) insurance companies as to material matters, and to obtain or attempt to obtain by materially false and fraudulent pretenses and representations, money and property of those insurance companies, on excess of $20 million; and

> (2) individual investors as to material matters, and to obtain and attempt to obtain by means of materially false and fraudulent pretenses and representations, money and property of those individuals investors to pay insurance premiums.

*Id.* at 3.

Defendants have plead not guilty to all counts of the Indictment.  ECF Nos. 34 and 35. Trial is currently scheduled to begin in this matter on September 18, 2023.

## B.  Relevant Procedural History

On January 9, 2023, Defendant James Wilson filed a motion to suppress statements.  ECF No. 58.  On January 9, 2023, Defendants James and Maureen Wilson filed motions for severance of the trial. ECF Nos. 60, 63.

On March 15, 2023, the Court held-in-abeyance James Wilson's motion to suppress statements and denied without prejudice Defendants' motion for severance.  ECF Nos. 83, 94. On March 29, 2023, James Wilson filed supplemental briefing in support of his motion to suppress statements.  ECF No. 86.

On April 11, 2023, Defendants filed renewed motions for severance of the trial.  ECF Nos. 89, 90, 92.  On April 12, 2023, the Government filed a response in opposition to James Wilson's motion to suppress statements.  ECF No. 93.  On April 18, 2023, James Wilson filed a reply in support of his motion to suppress.  ECF No. 95.

On April 26, 2023, the Government filed a response in opposition to Defendants' renewed motions for severance.  ECF No. 97. On May 5, 2023, Defendants filed a reply in support of their motions for severance.  ECF No. 101.

On June 30, 2023, Maureen Wilson filed an additional supplemental brief in support of her motion for severance.  ECF No. 102.

These matters having been fully briefed, the Court resolves the pending motions.

III.   **STANDARDS OF DECISION**

   **A.  Fed. R. Crim. P. 14**

Federal Rule of Criminal Procedure 14 addresses relief from prejudicial joinder for criminal co-defendants.  Fed. R. Crim. P. 14.  Under this Rule, the Defendants bear the burden of demonstrating that joinder of their offenses together into one trial is so "manifestly prejudicial that it outweighed the dominat[ing] concern with judicial economy." *United States v. Brock*, 190 F. App'x 279, 281 (4th Cir. 2006) (quoting *United States v. Acker*, 52 F.3d 509, 514 (4th Cir. 1995)).

The Supreme Court has held that this Court should grant severance under Rule 14 only if there existed some serious risk that a joint trial would prevent the jury from making a reasonable judgment regarding each defendant's guilt or innocence. *Zafiro v. United States*, 506 U.S. 534, 539 (1993).  The United States Court of Appeals for the Fourth Circuit has also characterized those situations in which a discretionary severance is appropriate under Rule 14 as "rare." *United States v. Hornsby*, 666 F.3d 296, 308-09 (4th Cir. 2012).  And so, the party requesting severance under Rule 14 "bears the burden of demonstrating 'a *strong* showing of prejudice[.]'"

*United States v. Branch*, 537 F.3d 328, 341 (4th Cir. 2008) (quoting *United States v. Goldman*, 750 F.2d 1221, 1225 (4th Cir. 1984)) (emphasis added).

### B.  Fed. R. Crim. P. 12(b)(3)

Federal Rule of Criminal Procedure 12(b)(3) governs motions that must be made before trial.  Fed. R. Crim. P. 12(b)(3).  This Rule provides, in relevant part, that:

> The following defenses, objections, and requests must be raised by pretrial motion if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits . . .
>
> (C) suppression of evidence;
>
> (D) severance of charges or defendants under Rule 14 . . . .

*Id.*

## IV.   ANALYSIS

### A.  The Defendants Have Shown That Separate Trials Are Warranted

As an initial matter, Defendants have met their burden to show that separate trials are warranted to ensure a fair trial for both Defendants in this case.  And so, the Court GRANTS their respective motions for severance.

Rule 14(a) provides that the district court "may order separate trials of counts" "[i]f the joinder of offenses . . . in an indictment . . . or a consolidation for trial appears to prejudice a defendant or the government[.]"  Fed. R. Crim. P. 14(a).  The Supreme Court has made clear that severance should be ordered when "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants or prevent the jury from making a reliable judgment about guilt or innocence."  *Zafiro*, 506 U.S. at 539.  The Fourth Circuit has also characterized those situations in which a discretionary severance is appropriate under Rule 14 as "rare." *Hornsby*, 666 F.3d at 308-09.  And so, this Court "should grant a severance under Rule 14 *only* if there is a serious risk that a joint trial would . . . prevent the jury from making a reliable judgment about guilt or innocence."  *Id.* at 309 (quoting *Zafiro*, 506 U.S. at 539).

The Defense requests that the Court conduct separate trials for the two Defendants in this case, because: (1) the marital communications and testimonial privileges mandate severance of the Defendants; (2) severance is required under *Bruton v. United States*; and (3) Defendants will

4

be prejudiced unless severed, because they will present antagonistic defenses at trial.  *See generally* ECF Nos. 89, 90, 92, 121.  Because the Court agrees that the Defendants' respective defenses in this case are mutually antagonistic, and that the Defendants would be prejudiced if tried together, the Court is satisfied that separate trials are necessary to ensure that Defendants receive a fair trial.

First, the Defendants have shown that their defenses in this case will be mutually antagonistic.  In this regard, Maureen Wilson explains that her defense in this case must be that her husband, James Wilson, "defrauded and victimized her."  ECF No. 92 at 10.  As Maureen Wilson acknowledges, there is evidence in this case to suggest that she had first-hand knowledge of, and involvement in, the insurance fraud alleged in the Indictment.  *Id.* at 4-9 (showing that Maureen Wilson signed and submitted fraudulent paperwork to insurance companies on many occasions; Maureen Wilson called insurance companies to process fraudulent paperwork; Maureen Wilson signed and submitted paperwork lying about her relationship to the deceased insured so that she could receive the death benefit payouts.).  Given this, Maureen Wilson argues that her "only viable defense is that she was duped, defrauded, and victimized by her husband and, therefore, had no knowledge or involvement in the fraud" and that "[t]his defense will require Maureen Wilson to testify."[1]  *Id.* at 10.

By comparison, James Wilson argues that his defense in this case is that there was no insurance fraud.  *Id.* at 13.  And so, his defense will involve testimony and other evidence to show that he did not engage in any fraudulent conduct in this case.  *Id.*

The Court agrees with Defendants that Maureen Wilson's defense is not reconcilable with James Wilson's expected defense in this criminal matter.  It would not be reasonable or practicable for Maureen Wilson to argue to the jury that she was a victim and defrauded by her husband, while also arguing to the jury that there was no fraud in this case as James Wilson maintains.   Nor could James Wilson reasonably argue to the jury that, on the one hand there was no fraud, but that he did defraud Maureen Wilson in connection with the conduct alleged in the Indictment.

---

[1] Maureen Wilson also argues that she will call James Wilson as a witness to establish her defense, because he presumably "has critical information concerning what information, if any, he provided to [her] about these transactions" and "the contents of the documents at the time [she] signed them, and whether these forms were blank."  ECF No. 121.

5

Defendants have also shown that they would be prejudiced if required to present their respective defenses during the same trial. As Defendants persuasively argue, Maureen Wilson's expected testimony at trial would include providing damaging evidence and/or testimony against James Wilson, to show that she was duped into participating in the alleged conspiracy to commit insurance fraud in this case. Such testimony would likely extend beyond the evidence presented by the Government in this case. And so, James Wilson would be faced with having to defend against the evidence presented by his wife, as well as defending against the evidence presented by the Government in this case.

While the Government correctly observes that the burden to show that severance under Fed. R. Crim. P. 14 is warranted is a high one, the Court is satisfied that Defendants have met their burden in this case, by showing that their respective defenses will be antagonistic to the degree that would warrant severance. *See Zafiro*, 506 U.S. at 538-39 ("Mutually antagonistic defenses are not prejudicial *per se*."). And so, the Court GRANTS the Defendants' motions for severance.

### B. The Court Will Suppress James Wilson's November 19, 2020, Statements

The Court also GRANTS James Wilson's motion to suppress certain statements that he made to law enforcement during the search of his home conducted on November 19, 2020.

James Wilson seeks to suppress these statements upon the grounds that he was in custody at the time the statements were made, and he was not provided *Miranda* warnings. *See generally* ECF No. 58. Because the totality of the circumstances surrounding James Wilson's interview with law enforcement on November 19, 2020, shows that he made the subject statements during a custodial interview, without being read his *Miranda* rights, the Court will suppress these statements at trial.

The Fourth Circuit has held that "[a]n individual is in custody for *Miranda* purposes when, under the totality of the circumstances, a suspect's freedom of action is curtailed to a degree associated with formal arrest." *United States v. Parker*, 262 F.3d 415, 419 (4th Cir. 2001) (quotation marks omitted) (quoting *Berkemer v. McCarty,* 468 U.S. 420, 440 (1984)). And so, when determining whether a person is in custody for the purpose of requiring a *Miranda* warning, the key question is whether, when viewed objectively, "a reasonable person [would] have felt he or she was not at liberty to terminate the interrogation and leave." *Thompson v. Keohane*, 516 U.S. 99, 112 (1995).

6

Relevant factors that the Court may consider when making this inquiry include: "the time, place and purpose of the encounter, the words used by the officer, the officer's tone of voice and general demeanor, the presence of multiple officers, the potential display of a weapon by an officer, [] whether there was any physical contact between the officer and the defendant . . . . . Also pertinent are the suspect's isolation and separation from family . . . and physical restrictions." *United States v. Hashime*, 734 F.3d 278, 283 (4th Cir. 2013).

The Fourth Circuit has also held that the "broad setting" of an interview can create a "custodial nature" for the defendant, even under circumstances where a defendant is interviewed by law enforcement at home. *See id.* at 284 (stating "the particular facts of [the defendant's] interrogation cut in the other direction" of generally not categorizing "familiar setting[s]" as places for "a custodial interrogation"); *see also United States v. Craighead,* 539 F.3d 1073, 1083 (9th Cir. 2008) (holding a suspect "may not feel that he can successfully terminate the interrogation if he knows that he cannot empty his home of his interrogators until they have completed their search"). Given this, the Fourth Circuit has recognized that an interrogation arising out of a search of the home can be custodial for *Miranda* purposes and require *Miranda* warnings. *See Hashime*, 734 F.3d at 284 (citing *United States v. Colonna,* 511 F.3d 431 (4th Cir. 2007)).

For example, in *United States v. Hashime*, the Fourth Circuit held that while the defendant was at home, the "broad setting" of the interview conducted at the defendant's home created a "custodial nature" for the defendant when: (1) the defendant was awoken by gunpoint; (2) his house was occupied by a flood of armed officers; (3) they "proceeded to evict him and his family and restrict their movements once let back inside[;]" (4) "[t]hroughout the interrogation, [the defendant] was isolated from his family members[;]" and (5) "his mother's repeated requests to see him denied." *Id.* Similarly, in *United States v. Colonna,* the Fourth Circuit also found an interview with law enforcement to be custodial under the circumstances where: (1) the defendant's house was inundated with over 23 FBI agents; (2) the defendant was awakened at gun point and guarded at all times; (3) the defendant was separated from his family; and (4) the defendant was bracketed by armed law enforcement agents during the interview and guarded during breaks. *See Colonna*, 511 F.3d at 433.

7

The evidence before the Court in this case shows that the totality of the circumstances indicate that James Wilson was in custody during his November 19, 2020, interview with law enforcement for several reasons.

First, with regards to the time, place, and purpose of law enforcement's encounter with Mr. Wilson on November 19, 2020, it is undisputed that FBI agents cut off James Wilson's car as he attempted to leave his home, with a "vehicle convoy" with red and blue flashing lights. ECF No. 85, Tr. 99:14-100:3; 126:19-20. It is also undisputed that seven law enforcement vehicles then descended on the Wilson home and parked in the driveway. *Id.* at 104:16-105:8.

Second, the presence of multiple officers at the Wilson home weighs in favor of finding that James Wilson was in custody. It is undisputed that approximately 20 armed agents entered the Wilson home to conduct the search on November 19, 2020. *Id.* at 90:10-14; 106:22-25; 106:34-35; 107:1-2; ECF No. 86 at 4. It is also undisputed that these agents were armed and wearing FBI vests when they entered the Wilson home and during the time that James Wilson was interviewed by two agents in the living room of his home. *Id.* at 102:13-21; *Id.* at 90:10-14; 106:12-20.

While James Wilson acknowledges that the agents did not display their weapons during his interview, it is also undisputed that the two agents who interviewed James Wilson were armed. ECF No. 86 at 6. The evidence before the Court also shows that Mr. Wilson was interviewed alone and that he was separated from family during the interview and search of the Wilson home. ECF No. 85, Tr. 107:3-17.

The evidence before the Court also makes clear that the interview of James Wilson took place in a police-dominated atmosphere. There is no dispute that James Wilson was interviewed by law enforcement just 10 minutes after he was stopped by the vehicle convoy of agents while attempting to leave his home. ECF No. 86 at 6. As discussed above, this interview also occurred while approximately 20 armed FBI agents were in his home conducting a search of the property.[2]

---

[2] While the Court concludes that the totality of the circumstances supports finding that James Wilson was in custody during the November 19, 2020, interview, there is also some evidence before the Court to support the Government's view that interview not custodial. For example, there is no dispute that James Wilson was not separated from his family for several hours during his interview and that the agents did not draw their weapons. ECF No. 93 at 2-3.

*Id.* Given this, the Court is satisfied that an objective person would believe he was not free to leave the premises.

Because the totality of the circumstances of this case, including the "broad setting" of the interview which was conducted during an ongoing search of the Wilson home by approximately 20 armed FBI agents, show that an objective person would believe he was not free to immediately terminate the interview and to leave, the Court concludes that James Wilson was in custody during the November 19, 2020, interview.  There is no dispute that the agents that conducted the interview of Mr. Wilson did not give him a *Miranda* warning before conducting this interview.  And so, James Wilson's statements to law enforcement on November 19, 2020, must be suppressed.

## V.    CONCLUSION

For the reasons discussed above, and stated during the July 6, 2023, pre-trial hearing, the Court:

(1) **GRANTS** Defendant Maureen Wilson's motion for severance from co-Defendant James Wilson (ECF Nos. 89, 121);

(2) **GRANTS** Defendants' supplemental motion for severance (ECF No. 90, 92); and

(3) **GRANTS** Defendant James Wilson's motion to suppress statements (ECF Nos. 58, 62).

 **IT IS SO ORDERED.**

s/Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
United States District Judge
