IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA

     v.                        :   Criminal No. DKC 21-360

JAMES WILLIAM WILSON, JR.

**MEMORANDUM OPINION and ORDER**

James Wilson filed a Motion for a New Trial pursuant to Fed.R.Crim.P. 33. (ECF No. 229). He claims that three substantial errors justify that relief: inadmissible lay witness testimony, lack of evidence as to materiality of the fraud allegations, and failure to provide essential jury instructions. Rule 33 permits a court to vacate a judgment and grant a new trial "if the interest of justice so requires."

> Courts have "widely agreed that Rule 33's 'interest of justice' standard allows the grant of a new trial where substantial legal error has occurred." *United States v. Munoz*, 605 F.3d 359, 373 (6th Cir. 2010). "[A]ny error of sufficient magnitude to require reversal on appeal is an adequate ground for granting a new trial." *United States v. Wall*, 389 F.3d 457, 474 (5th Cir. 2004) (quoting 3 Charles Alan Wright et al., Federal Practice and Procedure § 556 (3d ed. 2004)).

*United States v. Pomrenke*, 198 F.Supp.3d 648, 702 (W.D. Va. 2016).

## 1.    Evidentiary Errors

Mr. Wilson argues that the Government relied on inadmissible, speculative testimony by lay witnesses without first-hand knowledge to prove a required element for his fraud convictions. Mr. Wilson prepared applications for life insurance policies that misstated certain information, such as the smoking history of the proposed insured, his or her financial situation including income, net worth, and the existence of other life insurance, health and family history, and reason for insurance.  In order to prove the materiality of the myriad misstatements, the government called witnesses who currently worked or had worked in the life insurance industry and were familiar with the records and procedures of a particular life insurance company.  None were the actual underwriters for the specific policies.  No witness offered any opinion on any particular policy application or testified about the decisions made with regard to any specific policy.  The witnesses were not offered as or qualified as "experts."

The Government counters that the testimony was neither speculative nor expert, and its admission was not error.

Mr. Wilson misconstrues and misdescribes the testimony of these witnesses.  While none had been involved in the actual processing of the applications, all had first-hand experience in the industry and at the company whose records, policies, and

procedures were at issue.  They helped decipher some records, explained the different type of life insurance policies, and explained why certain information was sought in the applications and what difference it might make in the underwriting decision. Their testimony stayed safely on the side of admissible lay testimony.  *See, e.g.*, *Gary v. USAA Life Ins. Co.*, 229 F.Supp.3d 365 (D.Md.), *aff'd*, 698 F.App'x 159 (4th Cir. 2017).

**2.   Sufficiency of Evidence as to Materiality for any Insurance Company or Investor**

Business records of each life insurance company were received in evidence, although the Government did not call a representative for all.  Many of the life insurance witnesses (if not all) testified universally that certain types of information were relevant to underwriting decisions: age, health and family history, smoking history, income and wealth, other insurance, purpose of the insurance.  This information could affect whether coverage was offered at all, and, if so, in what amount and at what premium.  The Government was not required to call a representative of each company in order for the jury to assess the materiality of misstatements in the applications.

It is not clear just what Mr. Wilson would require to prove the materiality of the misstatements for the "investors."  Each thought she was investing in a properly obtained and managed life

insurance policy and relied on Mr. Wilson's assertions to that effect.

## 3.    Jury Instructions

Mr. Wilson reiterates his objections to the jury instructions concerning intent to defraud, the type of property that can be the object of wire or mail fraud, "benefit of the bargain," necessary detail on the timing of materiality requirement, and the taxation of insurance proceeds.    All of these issues were raised and resolved during trial, and Mr. Wilson does not advance any new argument or cite to new authority.    As to the *Ciminelli/Kousisis* argument, there is new authority; however, it goes against Mr. Wilson's position.    The Supreme Court decided *Kousisis v. United States* after trial was complete:

> The Government charged Alpha and Kousisis with wire fraud, asserting that they had fraudulently induced PennDOT to award them the painting contracts. See 18 U.S.C. § 1343. Under the fraudulent-inducement theory, a defendant commits federal fraud whenever he uses a material misstatement to trick a victim into a contract that requires handing over her money or property—regardless of whether the fraudster, who often provides something in return, seeks to cause the victim net pecuniary loss. We must decide whether this theory is consistent with § 1343, which reaches only those schemes that target traditional money or property interests. See *Ciminelli v. United States*, 598 U.S. 306, 316, 143 S.Ct. 1121, 215 L.Ed.2d 294 (2023). It is, so we affirm.

145 S.Ct. 1382, 1388 (2025).  The Court concluded:

4

> In short, the wire fraud statute is agnostic about economic loss. The statute does not so much as mention loss, let alone require it. Instead, a defendant violates § 1343 by scheming to "obtain" the victim's "money or property," regardless of whether he seeks to leave the victim economically worse off. A conviction premised on a fraudulent inducement thus comports with § 1343.

*Id.* at 1392.

**Conclusion**

Mr. Wilson has not put forth significant trial errors that justify the grant of a new trial and his motion IS DENIED.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge
